## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

OMAR HEVIA,                                              CASE NO.

     Plaintiffs,

vs.

OCWEN LOAN SERVICING, LLC,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, OMAR HEVIA sues Defendant, OCWEN LOAN SERVICING, LLC, for monetary relief, including attorney fees and costs, and respectfully demands judgment against the Defendant on all claims pled against it in this complaint. Plaintiff brings this action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R § 1024 ("Regulation X"), for violations of RESPA. The ultimate facts supporting Plaintiff's entitlement to the requested relief are articulated in the numbered paragraphs below.

### Jurisdiction, Venue, and Parties

1.    This Court has subject matter jurisdiction over Plaintiff's claim under the RESPA and Regulation X pursuant to 12 U.S.C. § 2614.

2.    Venue is proper in the United States District for the Southern District of Florida under 12 U.S.C. § 2614 because it is the district in which the property involved is located.

3.    Plaintiff is a Florida resident residing in Miami-Dade County, Florida.

4.    Defendant is a foreign corporation with its principal place of business in the State of Delaware. At all times material to this action, Defendant regularly transacted business in the State of Florida.

<u>Introduction</u>

5.　　In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Public Law No. 111-203, 124 Stat. 1376 (2010).

6.　　Specifically, on July 10, 2013, the CFPB issued mortgage rules under Regulation Z and Regulation X pursuant to its authority under the DFA, which became effective on January 10, 2014.

7.　　Defendant OCWEN LOAN SERVICING, LLC ("OCWEN") is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2) (the "Loan"). Defendant receives payments from consumers and is responsible for distributing those payments to the investors who own the consumers' loans and, when the consumers' loans include escrow accounts, to the consumers' taxing authorities or insurance companies. Thus, it is a servicer within the meaning of RESPA. 12 C.F.R. § 1025.2(b). Thus, the Defendant is subject to the servicing requirements provided for in the RESPA and Regulation X.

8.　　RESPA and Regulation X are applicable to all "federally related mortgage loans", which include any loans secured by a first or subordinate lien on residential real property upon which a one-to-four family structure is located and which is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by an agency of the Federal Government. *See* 12 C.F.R. § 1024.2. Accordingly, Plaintiff's Mortgage is a "federally related mortgage loan" as defined in Regulation X. *Id.*

9.　　Plaintiffs are asserting a claim for relief against Defendant for breaches of the specific rules under Regulation X as set forth below.

10.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, attorneys' fees and costs.

<u>Factual Allegations</u>

11.     Plaintiff is the fee simple owner of real property located at 13415 S.W. 59th Terrace, Miami, Florida 33183 (the "Property").

12.     On or about June 7, 2018, Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-W5 filed a foreclosure lawsuit in the 11th Judicial Circuit in and for Miami-Dade County, Florida against Plaintiff.  The case is styled *Deutsche Bank Nat'l Trust Co v. Omar D. Hevia, et al.*, case no. 2018-19354-CA-01.

13.     Defendant OCWEN was the loan servicer on the Plaintiff's loan from the June 7, 2018 filing of the foreclosure lawsuit through the date of the filing of this federal lawsuit.

14.     In August 2018, the Plaintiff submitted a facially complete loan modification package to OCWEN, which acknowledged same in its August 21, 2018 Motion for Continuance of Order to Show Cause filed in the circuit court proceedings.

15.     Pursuant to the terms of the temporary loan modification agreement agreed upon between Plaintiff and Defendant (the Ocwen Streamline Forbearance Plan), the Plaintiff was to make three payments in the amount of $909.78 for the months of September, October and November 2018 to qualify for a permanent modification.

16.     As evidenced by OCWEN's response to a Request for Information, OCWEN's payment history indicates that the three payments of $909.78 were received and accepted by OCWEN.  Exhibit 'A'.

17.     Despite Plaintiff's compliance with temporary loan modification, OCWEN proceeded to a Final Judgment against the Plaintiff which was entered on October 2, 2018 and to otherwise schedule the sale to take place on November 5, 2018.

18.     On November 1, 2018, OCWEN filed a motion to have the November 5, 2018 sale cancelled, given that Plaintiff was timely making his loan modification payments and otherwise informed the Court that the third payment was not due until November 30, 2018.  The circuit court cancelled the sale and reset it for December 10, 2018.

19.     As evidenced by OCWEN's payment history, OCWEN had received Plaintiff's third and final payment under the modification agreement on October 31, 2018.  Exhibit 'A'.

20.     On November 13, 2018, OCWEN purportedly mailed to the Plaintiff the permanent loan modification.  The permanent loan modification was either never mailed or received by the Plaintiff.  In this respect, the Plaintiff's family followed up with OCWEN with respect to when they could expect to receive the permanent loan modification documents.

21.     During this telephone conversation with OCWEN's representative and the Plaintiff's family member, Melissa Hevia, OCWEN informed her that the Plaintiff had been approved for the permanent loan modification, that the Plaintiff would need to execute the permanent loan modification, that OCWEN would email her the permanent loan modification since it had not been previously received by the family, and that the first payment was due on December 1, 2018.  At this time, Melissa Hevia explained that the Plaintiff was currently out of the country but would be returning shortly.  OCWEN informed Melissa Hevia that it would be acceptable for the signed modification and the payment to be received during the week of December 3-7, 2018.

22.     In this respect, on December 6, 2018 the modification paperwork and the payment were transmitted and/or received by OCWEN.  As evidenced by OCWEN's payment history, OCWEN received and accepted payment on December 6, 2018.

23.     Despite having received payment on December 6, 2018, OCWEN proceeded to allow the property to go to sale on December 10, 2018.  The property was sold to a third-party investor.  A Certificate of Sale was issued on December 13, 2018.  Plaintiff, acting in his *pro se* capacity, has filed an Objection to Sale.  As of the date of filing this Complaint, the Plaintiff is unaware of any activity on the part of the Defendant to vacate the sale.

24.     All conditions precedent prior to filing this lawsuit have occurred or otherwise been satisfied.

## COUNT I

25.     Plaintiff incorporates the allegations in paragraphs 1-16 above into this count for damages.

26.     12 C.F.R.1024.41(g) states:

Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option.

27.     The Plaintiff had submitted a complete loss mitigation application after OCWEN after the foreclosure complaint was filed, but more than 37 days before the October 2, 2018 final judgment and the December 10, 2018 sale date.

28.     None of the exemptions listed in subparagraphs (1)-(3) of 12.1024.41(g) applied to the Plaintiff.

29.     As set forth in the Official Bureau Interpretations comment 41(g)-2, 12 C.F.R. Appendix Supplement I to Part 1024, nothing prevents the servicer from proceeding with the foreclosure process upon receipt of the loss mitigation application, "so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale in violation of § 1024.41."

30.     As also set forth in the Official Bureau Interpretations comment 41(g)-5, 12 C.F.R. Appendix Supplement I to Part 1024, conducting a foreclosure sale, where none of the above conditions are applicable, is prohibited by law, "even if a person other than the servicer administers or conducts the foreclosure sale proceedings."

31.     The Plaintiff submitted an application to OCWEN, which was accepted by OCWEN.  The Plaintiff's home was sold in violation of 024.41(g).

32.     Plaintiff incurred actual damages in the form of (1) costs and legal fees incurred to prepare each subsequent request for information and subsequent notices of error; (2) costs incurred in connection with the photocopying and mailing of the requests for information and notices of error; (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X, and (4) the sale of her house.  Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages

pursuant to 12 U.S.C. § 2605(f).  The pattern or practices includes doing a publication of sale for November 2018, doing a publication of sale for December 2018, moving for final judgment and moving for sale.  Regulation X allows for up to $2,000 in statutory damages per pattern or practices.  Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

## Prayer for Relief

Wherefore, Plaintiffs demand final judgment against OCWEN providing for all of the following:

      a.  awarding actual damages that have been and may be proximately caused by OCWEN's violations;

      b.  awarding statutory damages;

      c.  prevailing party attorneys' fees and costs; and

      d.  awarding any further relief available under the law.

## Jury Demand

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

Respectfully submitted,

BRUCE BOTSFORD, P.A.
1615 S.W. 2nd Avenue
Ft. Lauderdale, Florida 33315
Telephone: (954) 990-4213
E-Mail: service@botsfordlegal.com


By:  *Bruce Botsford*
Bruce Botsford
Florida Bar No. 31127

-7-



**Law Offices of Bruce Botsford, P.A.**
1615 S.W. 2nd Avenue
Ft. Lauderdale, Florida 33315
Telephone: (954) 990-4213
www.BotsfordLegal.com

December 20, 2018

Tracking#: 7012 2210 0002 7173 0395

ATTN: Ocwen Research Department
PO Box 24736
West Palm Beach, FL 33416-4736

Property owner and borrower: Omar D Hevia
Loan Number: 7143105059
Property Address: 13415 SW 59th Ter Miami, FL 33183

This is a notice of error showing that Ocwen has engaged in a pattern or practice of non-compliance with no less than 5 errors. The borrower's loan has been permanently modified and reinstated yet Ocwen not only sought a final judgment while the borrower was in compliance and making his required payments, but it also moved for an order of sale and conducted a sale of the borrower's property. Ocwen did a publication of the foreclosure sale for 11/5/2018 and did another publication of the sale for 12/10/2018. The borrower is requesting that the Ocwen vacate the illegal foreclosure sale and vacate the illegal final judgment and file a voluntary dismissal of the case. The borrower has suffered actual damages while attempting to retain their home and is also entitled to statutory damages as well. Here are the facts surrounding Ocwen's actions which created errors in violation of 12 CFR 1024.41.

<u>Fact Pattern and Allegations</u>

Ocwen sent a letter dated 7/02/2018 stating that Ocwen is responding to borrower Hevia's recent contact with Ocwen regarding the need for mortgage assistance. Ocwen provided steps for applying for assistance.

Ocwen sent a letter dated July 7/30/2018 titled THE REQUEST FOR MORTGAGE ASSISTANCE WAS RECEIVED where Ocwen acknowledged receiving the request for mortgage assistance. The letter stated that Ocwen reviewed the application and the documents submitted and that the application was complete as of 7/26/2018.

Ocwen sent a letter dated 8/8/2018 titled THE ACCOUNT HAS BEEN APPROVED FOR A MORTGAGE ASSISTANCE OFFER making borrower aware that they have been approved for mortgage assistance which allowed the borrower to enter into a TPP or Trial Period Plan under an Ocwen Modification Plan. Ocwen stated that they needed a response by 9/01/2018 to start this trial modification and set out the amounts for three payments to be made by 11/1/2018. Another letter dated 8/08/2018 titled OCWEN Streamline Modification TRIAL PERIOD PLAN NOTICE stated the same information regarding the payments.

Letter dated 9/4/2018 stated THANK YOU FOR SETTING UP A DIRECT DEBIT PAYMENT and that Ocwen has been authorized to withdraw $909.78 from the checking or savings account ending in 2655 on 09/03/2018. This one-time payment is now scheduled.

Letter dated 11/13//2018 sent by Ocwen that was titled APPROVAL FOR PERMANENT MODIFICATION.  The letter stated Dear Omar D Hevia: Congratulations! You are approved for a loan modification. Please read this letter so that you understand the next steps necessary to accept the loan modification offer. This letter however was not sent by Ocwen timely and so the borrower requested the document from the relationship manager and received the letter via email on 11/27/2018.  The letter for approval also stated that FIRST MODIFIED PAYMENT DUE DATE: Your first modified monthly payment will begin on 12/01/2018.  The first modified payment was made.

As of the date of this notice of error Ocwen has received a total of four payments (3 trial modification payments and 1 permanent modification payment).  The trial payments were received from Ocwen withdrawn from the borrowers account by Ocwen on September 3, 2018, October 1, 2018, October 31, 2018, and December 6, 2018, respectively.

The borrower allegedly defaulted on 5/1/2017.
Ocwen verified a complaint for foreclosure seeking a deficiency judgment that was filed in state court on 6/7/2018.

Even though the borrower requested mortgage assistance, Ocwen through their attorneys filed a motion for Order to Show Cause for entry of final judgment on 7/13/2018.

An Order to Show Cause Hearing was set on 09/18/2018.

Ocwen then filed a notice of hearing on 7/24/2018 for the Show Cause Hearing to enter final Judgment which was 2 days before the loss mitigation application for mortgage assistance was complete.

On 8/221/2018 Ocwen filed a motion to continue and was denied on 8/21/2018 by the judge without prejudice to allow Ocwen's attorney to set their motion for hearing.

Ocwen then set the motion to continue the Show Cause Hearing for Entry of Final Judgment for 8/28/2018 rather than requesting that it be canceled since an application was complete.

Ocwen's motion to continue the Order to Show Cause for Entry of Final Judgment hearing was granted and reset for 10/2/2018.  By that date the borrower had already been approved for a TPP aka Trial Modification Plan and Ocwen had already received the first 2 payments of the TPP before 10/2/2018.

Ocwen filed a second motion for continuance requesting for additional time because the borrower had been approved for a streamline modification.  Ocwen was requesting a continuance of the 10/2/2018 Order to Show Cause for Entry of Final Judgment Hearing and that motion filed on 9/24/2018 was denied on 9/27/2018.

On 10/02/2018 Ocwen moved for final judgment and order of sale even though the borrower was complying with the terms of the TPP and had already made a second payment.

Ocwen filed on 10/29/2018 its proof of Mortgage Foreclosure Publication Fee for the sale set for 11/05/18 after the borrower had already made 2 payments for the TPP. This was a violation because the borrower was complying with the TPP.

Ocwen requested for a sale to occur on 11/5/2018. Ocwen knew it could not move for judgment or order of sale as it stated in both its own motions to continue the Order to Show Cause for Entry of Final Judgment filed on 8/21/2018 and 9/24/2018.

Ocwen misrepresented the facts in their motion that they filed on 11/01/2018 to cancel the sale and requesting additional time stating that the borrower had already made 2 payments and needed additional time for the borrower to make the last TPP aka Trial Period Plan Payment. However, that in itself was factually inaccurate because the borrower had already made the last payment and Ocwen received and process the payment on or before 10/31/2018. Ocwen should have asked the court not to reset the sale date because the last required payment to receive a Permanent Modification was already completed prior to filing their motion on 11/01/2018.

On 11/02/2018 Ocwen's motion was granted and the court canceled the sale scheduled for 11/05/2018 and reset the sale for 12/10/2018. Ocwen was placed on noticed that the court was not going to grant anymore continuances on sale cancellations. After the 3rd payment was received Ocwen should have instructed the court to vacate the final judgment and entered a voluntary dismissal in Order to avoid a sale on 12/10/2018.

Ocwen filed a motion on 11/28/2018 to cancel the sale scheduled for 12/10/2018 stating that the borrower had made all their payments and had been approved for a Permanent Modification. The borrower had only received the actual documents via email on 11/27/2018 regarding the Permanent Modification. Ocwen was made aware that no further continuances would be granted and yet it failed to vacate the final judgment and dismiss the foreclosure case.

Ocwen filed on 11/29/2018 its proof of Mortgage Foreclosure Publication Fee FOR SALE OF 12/10/18. This was a violation as well because Ocwen was prohibited from taking the borrowers property to sale after the borrower had made the 3 required TPP payments.

Ocwen filed a notice of hearing on 12-3-2018 to have its motion heard to cancel the foreclosure sale schedule on 12/10/2018. There is no evidence that Ocwen attending the hearing that it scheduled for 12/04/2018 to have the sale set for 12/10/2018 canceled. There is no Order dated 12/04/2018.

On 12/07/2018, there was an Order signed by the judge denying the motion filed by Ocwen to cancel the sale set for 12/10/2018. There is not a notice of hearing for 12/07/2018 filed by Ocwen rescheduling the hearing to have their motion heard to cancel the sale that was set for 12/10/2018. There is no evidence that Ocwen went in front of the judge on 12/04/2018 or on 12/07/2018. Ocwen's actions and lack of actions caused the foreclosure sale to go forward and the property was purchased by a third party at the auction.

Ocwen Violations included but not limited to:
1. Requesting for a continuance of hearings for the motions for judgement rather than canceling the hearing.
2. Moving for foreclosure judgment while the borrower is complying with the trial modification and had already made its 3 required payments.

3. Moving for an order of sale while the borrower is complying with the trial modification and had already made its 3 required payments.

4. Allowing for the for the foreclosure sale to be conducted while the borrower is complying with the trial modification and had already made its 3 required payments and had been approved for a permanent modification and made the borrower had already made its first payment to the permanent modification.

5. Conducting a publication for the foreclosure sale set for 11/5/2018 after Ocwen had granted the borrower a trial modification and the borrower had already made its 3 required payments and such steps in the foreclosure process resulted in the conduct of a foreclosure sale, in violation of § 1024.41.

6. Conducting a publication for the foreclosure sale set for 12/10/2018 after Ocwen had granted the borrower a permanent modification and the borrower had already made its 1st required payment and such steps in the foreclosure process resulted in the conduct of a foreclosure sale, in violation of § 1024.41.

**(g) Prohibition on foreclosure sale.** If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

**(1)** The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

**(2)** The borrower rejects all loss mitigation options offered by the servicer; or

**(3)** The borrower fails to perform under an agreement on a loss mitigation option.

*Paragraph 38(b)(3)(iii).*

**1.** *Sharing information with service provider personnel handling foreclosure proceedings.* A servicer's policies and procedures must be reasonably designed to ensure that servicer personnel promptly inform service provider personnel handling foreclosure proceedings that the servicer has received a complete loss mitigation application and promptly instruct foreclosure counsel to take any step required by § 1024.41(g) sufficiently timely to avoid violating the prohibition against moving for judgment or order of sale, or conducting a foreclosure sale.

*41(g) Prohibition on foreclosure sale.*

**1.** *Dispositive motion.* The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure

or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

2. *Proceeding with the foreclosure process.* Nothing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law, when the first notice or filing for a foreclosure proceeding occurred before a servicer receives a complete loss mitigation application so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale, in violation of § 1024.41.

3. *Interaction with foreclosure counsel.* The prohibitions in § 1024.41(g) against moving for judgment or order of sale or conducting a sale may require a servicer to act through foreclosure counsel retained by the servicer in a foreclosure proceeding. If a servicer has received a complete loss mitigation application, the servicer must instruct counsel promptly not to make a dispositive motion for foreclosure judgment or order of sale; where such a dispositive motion is pending, to avoid a ruling on the motion or issuance of an order of sale; and, where a sale is scheduled, to prevent conduct of a foreclosure sale, unless one of the conditions in § 1024.41(g)(1) through (3) is met. A servicer is not relieved of its obligations because foreclosure counsel's actions or inaction caused a violation.

4. *Loss mitigation applications submitted 37 days or less before foreclosure sale.* Although a servicer is not required to comply with the requirements in § 1024.41 with respect to a loss mitigation application submitted 37 days or less before a foreclosure sale, a servicer is required separately, in accordance with policies and procedures maintained pursuant to § 1024.38(b)(2)(v) to properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options available to the borrower pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan. Such evaluation may be subject to requirements applicable to a review of a loss mitigation application submitted by a borrower 37 days or less before a foreclosure sale.

5. *Conducting a sale prohibited.* Section 1024.41(g) prohibits a servicer from conducting a foreclosure sale, even if a person other than the servicer administers or conducts the foreclosure sale proceedings. Where a foreclosure sale is scheduled, and none of the conditions under § 1024.41(g)(1) through (3) are applicable, conduct of the sale violates § 1024.41(g).

- - - - - - - - - - -

Please govern yourself accordingly.

Very truly yours,

Bruce Botsford
For the Firm